**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                         :
**STEVEN R. PERLES,**                                    :        **Case No. 1:19-cv-10690**
**PERLES LAW FIRM, P.C., and**                           :
**FAY AND PERLES FSIA**                                  :
   **LITIGATION PARTNERSHIP,**               :
                                                         :
        **Plaintiffs,**     :
                                                         :
     **v.**                          :
                                                         :
**JOSEPH PETER DRENNAN,**                                :
**DAN GASKILL, and**                                     :
**PATRICK DONAHUE,**                                     :
                                                         :
       **Defendants.**         :
                                                         :
-------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS VERIFIED COMPLAINT

Stuart A. Berman (SB7146)                M. Katherine Sherman (KW7490)
Stanley J. Reed                          David C. Wrobel (DW5242)
Lerch, Early & Brewer, Chtd.             Wrobel Markham LLP
7600 Wisconsin Avenue, Suite 700         360 Lexington Avenue, 15th Floor
Bethesda, MD 20814                       New York, NY 10017
(301) 657-0729/(301) 347-1538 (f)        (212) 421-8100/(212) 421-8170 (f)
saberman@lerchearly.com                  sherman@wmlawny.com
sjreed@lerchearly.com                    wrobel@wmlawny.com

*Counsel for Joseph Peter Drennan,*
*Patrick Donahue, and Dan Gaskill*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................... 3

      A.     The Marine Barracks Bombing Cases ............................................... 3

      B.     The Turnover Proceeding ................................................................... 4

      C.     Perles's Previous Claims Against DDG .............................................. 5

      D.     Special Master Massey's Report and Recommendation and
             Judge Forrest's Opinion & Order ...................................................... 6

      E.     Allegations of the Verified Complaint ............................................... 7

ARGUMENT ........................................................................................................... 8

    I.     ALL THREE PLAINTIFFS LACK CAPACITY TO SUE ................................ 8

      A.     Perles and the Perles Law Firm, P.C. Lack Capacity to Sue on
             Behalf of the FSIA Partnership ......................................................... 8

      B.     The FSIA Partnership Lacks Capacity to Sue Because Under the
             Partnership Agreement Mr. Fay's Approval to Bring Suit Was
             Required and Not Given ..................................................................... 9

    II.    COUNTS I, II, AND III ARE BARRED BY THE STATUTE OF
          LIMITATIONS AND LACHES ................................................................. 11

      A.     New York's Borrowing Statute, C.P.L.R. § 202, Mandates
             Application of the District of Columbia Statute of Limitations ............... 11

      B.     Counts I, II, and III Are Untimely ...................................................... 12

      C.     Counts I, II, and III Are Also Barred by the Doctrine of Laches ............. 13

    III.   COUNTS I, II, AND III ARE BARRED BY *RES JUDICATA* BECAUSE
          JUDGE FORREST REJECTED IDENTICAL CLAIMS BY PLAINTIFFS
          AGAINST THE DDG DEFENDANTS IN 2018 ................................................. 15

IV.    THE VERIFIED COMPLAINT FAILS TO STATE VALID CAUSES OF ACTION UNDER NEW YORK LAW ..............................................................16

    A.    The Marine Barracks Agreement Precludes Plaintiffs From Pursuing Unjust Enrichment and *Quantum Meruit* Claims ......................16

    B.    Defendants Did not Secure an Unjust Benefit ...........................................17

    C.    Common Fund Doctrine Does Not Permit Plaintiffs to Seek Attorneys' Fees from Attorneys for Other Clients ...................................18

    D.    The Indemnification Claim in Count IV Is Not Ripe and Should be Dismissed Without Prejudice.....................................................19

    E.    A Hypothetical Future Dispute Involving Iranian Assets That Are Not Yet Subject to This Court's Jurisdiction Is Not Ripe for Declaratory Judgment ...............................................................................19

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*American Ins. Assn. v. Chu*, 64 N.Y.2d 379 (1985) ................................................. 19-20

*Armored Group, LLC v. Homeland Security Strategies, Inc.*, 2009 WL 1110783
    (S.D.N.Y. Apr. 21, 2009) ...................................................................19

*Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016) .................................................5

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006) ...................................................16

*Builders Affiliates v. North Riv. Ins. Co.*, 91 A.D.2d 360 (1st Dep't 1983) ................18

*Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204 (2d Cir. 2002) ....................................15

*Clark v. Daby*, 300 A.D.2d 732 (3d Dep't 2002) .......................................................17

*Cuomo v. Long Is. Light. Co.*, 71 N.Y. 2d 349 (1988) ................................................16

*Delaney v. Fay*, Case No. 1:19-cv-04085 (LAP) (S.D.N.Y.) ..................................12, 17

*Denaro v. Denaro*, 84 A.D.3d 1148 (2d Dep't 2011)..................................................13

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525 (2003) .............. 17-18

*Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550 (D.C. 2016) .....................................16

*Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557 (2d Cir. 2011) ....................................16

*Furman v. Cirrito*, 828 F.2d 898 (2d Cir. 1987) .........................................................10

*Global Fin. Corp. v. Triarc Corp.*, 93 N.Y. 2d 625 (1999) .........................................11

*Gray v. Gray*, 412 A.2d 1208 (D.C. 1980) ................................................................13

*Griva v. Davison*, 637 A.2d 830 (D.C. 1994) ............................................................10

*Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48 (2d Cir. 2000) ...........9

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012)........................................15

*Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412 (2016) .......................................13

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y. 3d 132 (2009) ...............................16

*In re Coudert Bros LLP*, 673 F.3d 180 (2d Cir. 2012) ...............................................................16

*In re 650 Fifth Avenue and Related Properties*, 934 F.3d 147 (2d Cir. 2019) ...........................20

*In re Holocaust Victim Assets Litigation*, 424 F.3d 150 (2d Cir. 2005) .......................................16

*Kantrowitz, Goldhamer & Graifman, P.C. v. New York State Elec. & Gas Corp.*,
    27 A.D.3d 872 (3d Dep't 2006) .................................................................................................18

*Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2d Cir. 1965) .....................................8

*Kleinman v. Elan Corp.*, 706 F.3d 145 (2d Cir. 2013) .................................................................3

*Little v. Washington Metropolitan Transit Authority*, 313 F.Supp.3d 27 (D.D.C. 2018) ............16

*Matter of Linker*, 23 A.D.3d 186 (1st Dep't 2005) .............................................................. 13-14

*Matter of Schulz v. State of New York*, 81 N.Y.2d 336 (1993) ....................................................14

*McDermott v. City of New York*, 50 N.Y.2d 211 (1980) .............................................................16

*McIntosh v. Washington*, 395 A.2d 744 (D.C. 1978) .................................................................16

*McKenna v. Lehrer McGovern Bovis, Inc.*, 302 A.D.2d 329 (1st Dep't 2003) ...........................19

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005) ...............................................................................................16, 17

*M.I.F. Securities Co. v. R.C. Stamm & Co.*,   94 A.D.2d 211 (1st Dep't),
    *aff'd*, 60 N.Y.2d 936 (1983)......................................................................................................8

*Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265 (2d Cir. 1977) ........................................................15

*Momenian v. Davidson*, 878 F.3d 381 (D.C. Cir. 2017) ............................................................12

*Mullin v. Wash. Free Weekly*, 785 A.2d 296 (D.C. 2001) ..........................................................12

*NCAS Realty Mgmt. Corp. v. Nat'l Corp. for Housing Partnerships*,
    143 F.3d 38 (2d Cir. 1998) ................................................................................................. 9-10

*News World Communications, Inc. v. Thompsen*, 878 A.2d 1218 (D.C. 2005) ..........................13

*NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012) ................................13

*Norex Petroleum Ltd. v. Blavatnik*, 23 N.Y. 3d 665 (N.Y. 2014) ................................................11

*Peterson v. Islamic Republic of Iran,* 264 F. Supp. 2d 46 (D.D.C. 2003) ........................... *passim*

*Peterson v. Islamic Republic of Iran,* Case No. 1:10-cv-4518-LAP (S.D.N.Y.) ................. *passim*

*Peterson v. Islamic Republic of Iran,* 876 F.3d 63 (2d Cir. 2017) ................................................20

*Proforma Partners, LP v. Skadden Arps Slate Meagher & Flom, LLP,*
    280 A.D. 2d 303 (1st Dep't 2001) ...................................................................................11

*Proskauer Rose Goetz & Mendelsohn v. National Westminster Bank U.S.A.,*
    179 A.D. 2d 611 (1st Dep't 1992) ...................................................................................18

*Providence Hosp. v. Dorsey*, 634 A.2d 1216 (D.C. 1993) ...........................................................16

*Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432 (D.C. 2000) ...................................16

*Summers v. City of Rochester*, 60 A.D.3d 1271 (4th Dep't 2009) ................................................14

*Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274 (D.C. Cir. 2009) .......................................................13

*Weddington v. Sentry Industries*, 2019 WL 5212355 (S.D.N.Y. Oct. 16, 2019) .........................13

*Wells Fargo Bank, N.A. v. Burke*, 155 A.D. 3d 668 (2d Dep't 2017) ..........................................18

*Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114 (1998).............................................................17

*Williams v. G.H. Development & Construction Co., Inc.*, 250 A.D.2d 959 (3d Dep't 1998) .......19

**STATUTES**

D.C. Code § 12-301 ...............................................................................................................11

N.Y. C.P.L.R. § 202 ..............................................................................................................10

N.Y. C.P.L.R. § 1025 ...............................................................................................................8

**RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2, 7, 8

Fed. R. Civ. P. 17(b)(3) ................................................................................................. 8

**TREATISES**

13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*
    § 3532.2 (3d ed. 2011) ...................................................................................................19

**INTRODUCTION**

In this dispute, one attorney who earned contingency fees for representing some plaintiffs in the successful litigation against the Islamic Republic of Iran related to the 1983 bombing at the Marine Barracks in Beirut, Lebanon seeks to seize contingency fees earned by and already paid to three attorneys pursuant to their retainer agreements with other plaintiffs. Steven R. Perles and Thomas Fortune Fay, through their Fay & Perles FSIA Litigation Partnership ("FSIA Partnership"), secured liability judgments in *Peterson v. Islamic Republic of Iran,* Case No. 1:01-cv-02094-RCL (D.D.C. filed Oct. 3, 2001) and related cases ("*Peterson*"). Joseph Peter Drennan, Patrick Donahue, and Dan Gaskill (collectively "DDG"), as well as other attorneys, secured liability judgments for their own clients in related cases.

After damages hearings, the Court entered judgment for more than $2.6 billion in *Peterson* and additional judgments for DDG's clients. An enforcement action in this district – which included the *Peterson* action and related cases brought by DDG and others – secured Iranian assets to partially satisfy those judgments. *Peterson v. Islamic Republic of Iran,* Case No. 1:10-cv-4518-LAP (S.D.N.Y. filed June 8, 2010) ("Turnover Proceeding"). By December 2016, through a Qualified Settlement Fund ("QSF") established with those assets, and in conformity with attorneys' agreements with their clients, each other, and enforcement counsel, this Court awarded contingency fees of approximately $127 million *each* to Perles and Fay and approximately $13 million to Drennan, $10 million to Donahue, and $9 million to Gaskill.[1]

In 2017, a dissatisfied Perles claimed that he was entitled to 97% of the fees that this Court had awarded to DDG and others in representation of their own retained clients. During

---

[1] *See* "Interim Attorney Fee Payout," Case No. 1:10-cv-4518, ECF 870-7, at 3-4. Selected pages of ECF 870-7 are attached as Exhibit 1. All ECF references are to Case No. 1:10-cv-4518, unless otherwise noted.

proceedings before Special Master Kathleen N. Massey, Perles presented claims now set forth in his Verified Complaint ("VC"). After a detailed examination, in December 2017 Special Master Massey recommended that the Court reject all of Perles's claims, noting that Perles was the only retained attorney contesting the fee distributions, that his claims had "shifted over time," that he was attempting to "re-cast the efforts" of DDG and others, and that his positions were unsupported by legal precedent. ECF 870 at 70-79. Perles did not file objections to the Special Master's Report and Recommendation. In a July 2018 Opinion & Order, Judge Katherine B. Forrest confirmed and adopted the Report and Recommendation and rejected Perles's claims. ECF 944 at 21. Perles did not appeal.

Over a year later, on July 8, 2019, Perles filed the VC against DDG in the New York State Supreme Court on behalf of himself, the Perles Law Firm, P.C., and – without the required consent from his partner Fay – the FSIA Partnership. The VC essentially recast Perles's previous claims as unjust enrichment, *quantum meruit*, and common fund doctrine actions, and added indemnification and declaratory judgment counts related to highly speculative future events. Defendants removed the case to this Court on November 19, 2019.

The VC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). No plaintiff has the capacity to sue. Perles and the Perles firm cannot sue because the purported causes of action belong to the FSIA Partnership, which in turn cannot sue because both partners did not approve filing the VC. In addition, Perles's backward-looking claims are barred by the statute of limitations and the doctrine of laches, are precluded by Judge Forrest's order rejecting his previous claw-back efforts, and otherwise fail to state a claim. Finally, Perles's speculative forward-looking claims for indemnification and declaratory judgment are not ripe.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Special Master Massey's December 6, 2017 Report and Recommendation ("Report and Recommendation") summarized disputes relating to payments from the QSF. ECF 870. Judge Forrest adopted it without objection on June 18, 2018. ECF 944. Relevant portions follow.

### A.    The Marine Barracks Bombing Cases

Fay and Perles formed their FSIA ("Foreign Sovereign Immunities Act") Partnership in February 2001.[2] In the *Peterson* Action, the FSIA Partnership filed an initial complaint on October 3, 2001 and later filed related cases. Judge Royce Lamberth entered a default judgment as to liability against the Iranian defendants. *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 47, 59–64 (D.D.C 2003). Special masters conducted individualized evidentiary hearings on damages and issued reports and recommendations. ECF 870 at 9-12. The FSIA Partnership retained "Damages Attorneys" to assist with those hearings pursuant to fee-sharing agreements that paid the attorneys 3% of gross compensatory damages collected, plus expenses. On September 7, 2007, Judge Lamberth awarded compensatory damages of more than $2.6 billion to the majority of *Peterson* Action plaintiffs. *Id.* at 12-13. Between 2002 and 2012, on behalf of their own retained clients, DDG filed and prosecuted to judgment "Follow On" related cases and secured judgments for other retained clients who were victims of the Beirut bombing, estates, or family members. These actions were separate from and not covered by the Damages Attorneys' agreements with the FSIA Partnership. *Id.* at 14-18.

---

[2] A copy of the FSIA partnership agreement, ECF 870-12, is attached as Exhibit 2. Perles references the formation of the FSIA Partnership in the Verified Complaint. VC ¶ 8. In considering a motion to dismiss under the familiar *Iqbal/Twombly* standard, which need not be repeated here, this Court may consider the partnership agreement because Plaintiffs reference the partnership in ¶ 8 of the VC and either possessed or knew about, and relied upon, the agreement in bringing suit in the name of the partnership. *Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d Cir. 2013).

B.        The Turnover Proceeding

After locating Iranian assets ("the Clearstream Assets") in New York, collections counsel

registered Judge Lamberth's judgment in this Court, obtained a writ of execution, served

restraining notices, and commenced the Turnover Proceeding. *See id.* at 21-22. When Iran was

served and failed to respond or appear, the Court restrained Iran's Clearstream Assets and

Congress made them subject to execution to satisfy terrorism judgments. 22 U.S.C. § 8772(a)(1);

*id.* at 22-23. While the Turnover Proceeding was pending, Fay and Perles agreed[3] on

February 12, 2012 that "[a]ny fees earned by Fay or Perles in any Marine Barracks bombing

related litigation under the Foreign Sovereign Immunities Act is property of the Fay & Perles

Partnership and as such is an asset of the Partnership." Exhibit 3 at ¶ (d). They agreed that any

fees Fay earned from Follow On cases as co-counsel with DDG "are an asset of the Partnership

and shall be shared 50-50 between Fay and Perles." *Id.* ¶¶ (b), (e), (f), (g), (h), (i), (k).

On February 21, 2012, DDG, Perles, Fay, and counsel for other plaintiffs entered "the

Marine Barracks Agreement" providing for distribution of the Clearstream Assets to judgment

creditors proportionate to their respective compensatory damage awards.[4] As the Special Master

observed: "Nothing in the Marine Barracks Agreement suggested that any attorneys were

waiving their claims for contingent-fees based on their clients' recoveries or agreeing to share

fees with other attorneys, and none of the attorneys entered into revised retainer agreements

establishing new attorney-client relationships with plaintiffs whom they had not previously

represented." ECF 870 at 25. On June 1, 2012, plaintiffs and counsel in the Marine Barracks

---

[3] *See* ECF 870-31 at 99-102, attached as Exhibit 3.

[4] The Marine Barracks Agreement was an exhibit to the Special Master's Report and
Recommendation. *See* ECF 870-6 (redacted).

actions entered into a "Sharing Agreement" with each other and counsel and plaintiffs in other cases involving Iran-sponsored terrorism for *pro rata* distribution of Clearstream Assets that might become available to satisfy judgments. *Id.* at 26-27. On March 13, 2013, this Court granted partial summary judgment to judgment creditors who were parties to the Sharing Agreement, noting that they had "reached agreement as to the priority and manner of distribution of any recovery." 2013 WL 1155576 at *2 (S.D.N.Y. Mar. 13, 2013), *aff'd*, *sub nom. Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016).

On July 9, 2013, this Court ordered creation of the QSF; directed that the Clearstream Assets be turned over to the QSF; and appointed a Trustee. Under the Sharing Agreement, each plaintiff would recover a *pro rata* share of the overall compensatory damages awarded against Iran. Payment of attorneys' fees would comport with the Sharing Agreement and agreements between plaintiffs and their attorneys. *Id.* at 28. On June 6, 2016, this Court ordered the Trustee to distribute the assets of the QSF to the plaintiffs and their counsel in accordance with the applicable agreements. The QSF Agreement and Sharing Agreement both provided for payment of attorneys' fees, costs and expenses pursuant to each plaintiff's agreement with its counsel. *Id.* at 28-29. Perles did not object. In December 2016 the Trustee made an "Interim Attorney Fee Payout" of $250 million, out of more than $500 million in total fees, to attorneys who had provided services to the plaintiffs in *Peterson* and related cases. The Trustee halted further distributions because of disputes among the attorneys. The Court appointed Special Master Massey to resolve those disputes. *Id.* at 29-33.

### C.    Perles's Previous Claims Against DDG

In the Special Master proceeding, Perles unequivocally claimed 97% of the fees earned by DDG, arguing that Defendants' contingent-fee agreements with their clients should not be enforced and that fee-sharing agreements were not binding. *Id.* at 71, 73. First, Perles contended

that the FSIA Partnership was entitled to fees for "represent[ing] all of the plaintiffs in all of the cases," notwithstanding agreements between Follow On Attorneys and their clients. *Id.* at 74. Second, Perles sought to void those agreements because DDG supposedly did no original thinking and no more work than the Damages Attorneys, copied his work, played little role in the Turnover Proceeding, and wrongfully appropriated clients. *Id.* Third, Perles claimed the FSIA Partnership was entitled to compensation under the "common fund" doctrine for creating the QSF. *Id.* at 75. Finally, Perles claimed that the FSIA Partnership had express or implied contracts with all Marine Barracks plaintiffs. *Id.* at 76. Fay did not join in Perles's claims, consistent with the fact that Fay had signed the Interim Attorney Fee Payout. One of Perles's attorneys signed for Perles and the Perles firm while "Reserving all rights against attorneys herein regarding their entitlement to the fees specified." *See* Exhibit 1 at 50. DDG opposed Perles's claims.

### D.   Special Master Massey's Report and Recommendation and Judge Forrest's Opinion & Order

Special Master Massey recommended that the Court reject Perles's arguments. First, she interpreted Perles's position as a claim that he had a lien against funds otherwise payable to the Follow On Attorneys, but found that under New York law he was not entitled to a lien "on funds awarded to parties the attorney did not represent and for whom he did not appear." *Id.* Second, she treated Perles's claims as an untimely motion for reconsideration of or relief from orders distributing funds from the QSF, which provided that payments to counsel "will be governed by *each Creditor Plaintiff's agreement with its respective counsel.*" *Id.* at 77 (emphasis in original). Third, she rejected Perles's "common fund" claim because no agreement stated that the FSIA Partnership would be entitled to a special fee as counsel for all plaintiffs or its efforts to create a "common fund." *Id.* Finally, the Special Master found that Perles was familiar with all aspects of the QSF and could have asserted claims for additional compensation before the Trustee

distributed funds. *Id.* at 78. Perles did not file objections and Judge Forrest adopted the Report on

June 18, 2018. ECF 944. She noted no party had objected to the recommendation "that the Court

should … reject a series of arguments made by the Perles Law Firm regarding its entitlement to

fees or seeking to limit the fees owed to the Follow On Attorneys … [and] Order the Trustee to

pay the Retained Attorneys according to the terms of their contingent-fee agreements, as well as

the fee sharing agreements between or among themselves." *Id.* at 21.[5]

**E.    Allegations of the Verified Complaint**

Perles demands 97% of the fees DDG earned representing their retained clients, alleging

that they "fail[ed] to contribute in any way to the massive collection effort…, despite knowing

that it would benefit their clients." VC ¶ 1. Perles never claims he had attorney-client

relationships with DDG's clients and acknowledges Defendants' contingency fee arrangements

with them. ¶ 49. Rather, Perles maintains that Defendants should receive no more than the 3%

fee paid to Damages Attorneys, ¶ 49, because "[e]ach of the Defendants knew perfectly well that

the entire line of work arising out of the Marine Barracks bombing and the *Peterson* case

originated with Plaintiffs." ¶ 53. He further complains that Defendants failed to contribute to the

Perles plaintiffs' original investigation or to the prosecution of the Turnover Proceeding. ¶ 55.[6]

Count I alleges that DDG were unjustly enriched and should have to repay Plaintiffs

$29,145,613.29 – that is, 97% of the fees they received pursuant to their client retainer

---

[5] The Special Master concluded the relevant section of her Report and Recommendation by stating that "[i]f Perles believes he possesses some valid cause of action against the Follow On Attorneys or [another firm] as a result of their alleged *misconduct*, Perles is free to pursue such claims in an appropriate judicial or arbitral forum, rather than holding up further distributions to other counsel from the QSF." *Id.* at 79 (emphasis added). Perles has made no such claims of misconduct here. For that and other reasons, his claims are barred.

[6] While recognizing the standard that applies to a Rule 12(b)(6) motion, Defendants are compelled to observe that many of Perles's allegations are demonstrably false based on the record developed in the Turnover Proceeding.

7

agreements. ¶¶ 201-207. Count II asserts a *quantum meruit* claim for $29,145,613.29 to the FSIA

Partnership, and half that amount, or $14,572,806.64, to Perles. ¶¶ 210-214. Count III claims

these amounts under the theory that Perles created a common fund, the QSF, from which

Defendants were unjustly enriched. ¶¶ 215-220. Count IV seeks indemnification against a

hypothetical future award in favor of attorney Allen Rothenberg against Perles. ¶¶ 221-223.

Count V seeks a declaratory judgment awarding Perles 97% of any fees that might be awarded if

two alleged Iranian assets, "Clearstream II" and "650 Fifth Avenue," become available to satisfy

the judgment. ¶¶ 224-227.

## ARGUMENT

### I.     ALL THREE PLAINTIFFS LACK CAPACITY TO SUE

The FSIA Partnership represented plaintiffs in the *Peterson* Action. Neither Perles nor his

law firm have capacity to sue on behalf of the partnership. And the partnership cannot sue

because the partners' agreement provides that "nor at any time shall any Partner sign the firm

name … except upon mutual consent of both partners" and Fay has provided no such consent.

### A.     Perles and the Perles Law Firm, P.C. Lack Capacity to Sue on Behalf of the FSIA Partnership

Lack of capacity may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Klebanow v. New York Produce Exchange,* 344 F.2d 294, 296 n.1 (2d Cir. 1965). Pursuant to

Fed. R. Civ. P. 17(b)(3), this Court applies New York law to determine a partnership's capacity

to sue. New York law does not permit the "facile interchange of identities" between partners and

partnerships. *M.I.F. Securities Co. v. R.C. Stamm & Co.,* 94 A.D.2d 211, 216 (1st Dep't),

*aff'd,* 60 N.Y.2d 936 (1983). Under CPLR § 1025, "[t]wo or more persons conducting a business

as a partnership may sue or be sued in the partnership name…." But

> [t]he jural rights of a partnership, as an entity, are separate and distinct from those of its partners and employees, as individuals. "[W]here an action on a partnership claim is brought, as it should be, in either the firm name or in the names of the individual members as copartners, the firm members sue in a capacity different from their capacity as individuals." … A partnership may not assert the claim of an individual partner …, any more than an individual partner may assert the claim of the partnership….

*M.I.F. Securities Co.,* 94 A.D.2d at 216 (citations omitted); *Handelsman v. Bedford Village Associates Ltd. Partnership,* 213 F.3d 48, 54 (2d Cir. 2000) ("a partnership cause of action belongs only to the partnership itself or the partners jointly").

Perles clearly lacks capacity to sue as an individual or on behalf of his law firm. Fay and Perles formed the FSIA Partnership in February 2001 and through it filed the first *Peterson* Action complaint in the District of Columbia in October 2001. ECF 870 at 9. The Special Master stated that "*[t]he FSIA Partnership represented* each of the *Peterson* Action plaintiffs pursuant to contingent-fee agreements with their clients…." *Id.* at 12 (emphasis added). "Fay and Perles, *as partners of the FSIA Partnership*, were retained directly by the plaintiffs in the *Peterson* Action…." *Id.* at 17 (emphasis added). All interactions and relationships between DDG and other counsel in related cases and Fay and Perles involved agreements between Defendants and the FSIA Partnership, not Perles as an individual or Perles's firm. Indeed, the February 15, 2012 agreement between Fay and Perles stated that all fees earned by Fay or Perles in any Marine Barracks bombing case, including DDG's cases, were assets of the FSIA Partnership. Under these circumstances, all individual claims by Perles and his firm should be dismissed.

**B.    The FSIA Partnership Lacks Capacity to Sue Because Under the Partnership Agreement Mr. Fay's Approval to Bring Suit Was Required and Not Given**

All claims in the name of the FSIA Partnership should be dismissed because it did not authorize this action. "When a partnership agreement contains clear and unambiguous terms, New York courts enforce the plain meaning of those terms...." *NCAS Realty Mgmt. Corp. v.*

*Nat'l Corp. for Housing Partnerships,* 143 F.3d 38, 45 (2d Cir. 1998); *Furman v. Cirrito,* 828

F.2d 898, 901 (2d Cir. 1987) (rights and obligations "are fixed by the terms of the partnership

agreement.").

Paragraph 10 of the FSIA Partnership between Perles and Fay is a unanimous consent

provision that prohibits any partner from signing the firm name or taking any other significant

action without the mutual consent of both partners. It provides specifically that "no Partner shall

make any contract for and on behalf of the Partnership without the prior approval of the other

Partner" and that "in the case of any disagreement as to the making of any contract or

assumption of any obligation by the Partnership, such contract or obligation shall not be made or

executed except as directed by both of the Partners." Exhibit 2 at ¶ 10. It also specifically states:

"nor at any time shall any Partner sign the firm name … except upon mutual consent of both

partners." *Id.* Under District of Columbia law, which governs the Agreement (Paragraph 17), a

unanimous consent provision is fully enforceable. *Griva v. Davison,* 637 A.2d 830 (D.C. 1994).

Fay did not sign the VC, nor does Perles allege that Fay otherwise authorized or

consented to the FSIA Partnership filing this action against DDG. In fact, Defendants are

informed and believe that Fay has explicitly disapproved of the filing of this lawsuit, and did not

cede to Perles the authority to act unilaterally on the FSIA Partnership's behalf. In the prior

proceedings, Special Master Massey made findings, adopted by this Court, that Fay has

consistently supported the right of DDG and other Follow On Attorneys to be paid according to

their retainer agreements with their respective clients. ECF 870 at 71, 73, 85-86 (noting that all

other attorneys, including Fay, opposed Perles's claim for 97% of fees and approved Interim

Attorney Fee Payout). Fay refused to join in Perles's arguments and signed the Interim Attorney

Fee Payout without reserving any claims against other attorneys. Without Fay's consent, the

FSIA Partnership lacks authority to sue and should be stricken as a plaintiff.

10

## II.     COUNTS I, II, AND III ARE BARRED BY THE STATUTE OF LIMITATIONS AND LACHES

Judge Lamberth entered judgment in 2007 and this Court ordered the turnover of Iranian assets in 2013. Perles's July 2019 claims for unjust enrichment, *quantum meruit*, and common fund are barred by the statute of limitations and doctrine of laches.

### A.     New York's Borrowing Statute, C.P.L.R. § 202, Mandates Application of the District of Columbia Statute of Limitations

None of the Plaintiffs are New York residents. Under New York's borrowing statute, CPLR § 202, a nonresident plaintiff who suffers an injury outside of the state must satisfy that jurisdiction's statute of limitations as well as New York's. The statute provides that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued." It effectively subjects the cause of action to whichever state's limitations period is shorter. *Norex Petroleum Ltd. v. Blavatnik*, 23 N.Y.3d 665, 668 (N.Y. 2014). Allegations of economic injury normally take place in the state of plaintiff's residence. *Global Fin. Corp. v. Triarc Corp*, 93 N.Y.2d 625, 529-530 (1999). Perles claims to live in Florida, but the alleged economic injury relates to his law practice in Washington, D.C. His law firm and the FSIA Partnership, as District of Columbia entities, are statutorily deemed to be residents of the District. *Proforma Partners, LP v. Skadden Arps Slate Meagher & Flom, LLP,* 280 A.D.2d 303 (1st Dep't 2001). CPLR § 202 dictates application of District of Columbia law.

The District of Columbia has a three-year statute of limitations for breach of contract and related equitable claims such as unjust enrichment under D.C. Code § 12-301. As in other jurisdictions, the general rule is that "where the fact of an injury can be readily determined, while a claim accrues for purposes of the statute of limitations at the time the injury actually

occurs," *Mullin v. Wash. Free Weekly,* 785 A.2d 296, 298 (D.C. 2001) (internal quotation marks omitted), a more forgiving "discovery rule" based on actual or inquiry notice applies if the relationship between the fact of injury and the wrongful conduct is obscure at the time of injury. *Momenian v. Davidson*, 878 F.3d 381, 388 (D.C. Cir. 2017).

### B.    Counts I, II, and III Are Untimely

The VC fails to allege any affirmative act by the Defendants on or later than July 8, 2016 – that is, three years before the filing of the action – that gave rise to a cause of action under Counts I, II, or III. Indeed, in the related case of *Delaney v. Fay,* Case No. 1:19-cv-04085 (LAP), Perles has previously made clear to this Court that an action filed in July 2019 would be untimely even if a longer statute of limitations applied.

In *Delaney,* an attorney who worked on the *Peterson* case sued Perles, Fay, the Perles firm, the FSIA Partnership and another attorney and his firm for a share of the attorneys' fees that her work supposedly helped to generate. The Fay and Perles defendants explicitly asserted that New York's six-year statute of limitation applied and that Delaney had not satisfied it:

> Plaintiff's claims for breach of contract (and her related equitable claims) accrued well over six years ago…. Contract claims accrue "when the plaintiff had the right to demand payment." *Id.* That rule applies even if the amount owed is uncertain or contingent or an unfulfilled event. *See id*….
>
> Delaney could have demanded payment in September 2007 when the Court awarded damages to the *Peterson* plaintiffs following evidentiary hearings about their individual recovery…. Although the money had not yet reached the Defendants' hands, according to Delaney's own claims, her alleged legal right to attorneys' fees existed even then, when the *Peterson* plaintiffs successfully recovered damages. Delaney certainly could have asserted her alleged right to payment in March 2013 when the Court granted plaintiffs' motion for turnover of Iranian assets.[7]

---

[7]   *See* Defendants' Memorandum of Law in Support of Motion to Dismiss, Case No. 1:19-cv-04085-LAP, ECF 27, at 10 (citations and footnotes omitted). Relevant pages are attached as Exhibit 4. It cited with approval Judge Forrest's adoption of the Special Master's Report, specifically the holding that Delaney's attempt to intervene in the case was untimely.

As the Supreme Court has observed, "[a]fter all, in the law, what's sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.,* 136 S.Ct. 1412, 1418 (2016). Applying Perles's own standard, the latest date on which he knew about DDG's allegedly improper conduct was March 2013. For Perles to claim that this action is timely while the *Delaney* case is not would be "the litigation equivalent of Three-Card Monte…." *Weddington v. Sentry Industries,* 2019 WL 5212355 (S.D.N.Y. Oct. 16, 2019) (Castel, J.).

Of course, neither Defendants nor the Court should rely solely on Perles's legal analysis. Under District of Columbia law, an unjust enrichment claim accrues at the time of the wrongful act that gives rise to a duty of restitution, *Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 283 (D.C. Cir. 2009); *News World Communications, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005); *Gray v. Gray*, 412 A.2d 1208, 1223 (D.C. 1980) (citation omitted). Perles could have demanded in 2007 or 2013 that DDG be limited to the same fees as Damages Attorneys. He did not. Counts I, II, and II are barred by the applicable statute of limitations.

### C.      Counts I, II, and III Are Also Barred by the Doctrine of Laches

Having sat on his hands, Perles should also be barred from pursuing this action under the equitable doctrine of laches. Laches requires: "(1) conduct giving rise to the situation complained of, (2) delay in asserting a claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert the claim, and (4) injury or prejudice to the offending party as a consequence relief granted on the delayed claim." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 261 (2d Cir 2012) (citing *Denaro v. Denaro*, 84 A.D.3d 1148, 1149–50 (2d Dep't 2011). Each element is clear from the allegations of the VC. Prejudice may be established by a showing of "injury, change of position, loss of evidence, or some other disadvantage resulting from the delay." *Matter of*

13

*Linker*, 23 A.D.3d 186, 289 (1st Dep't 2005) (citation omitted). "Where there is no excuse for delay, defendants need show little prejudice; a weak excuse for delay may, on the other hand, suffice to defeat a laches defense if no prejudice has been shown." *Harley–Davidson, Inc. v. O'Connell*, 13 F.Supp.2d 271, 282 (N.D.N.Y. 1998) (quotation marks and citation omitted).

Perles waited 12 years after the District of Columbia judgment to challenge the supposed inequity caused by the payments to DDG. He waited seven years after the Marine Barracks Agreement, more than six years after partial summary judgment in the Turnover Proceeding, almost six years after the creation of the QSF, more than two years after the initial payout from the QSF, more than a year-and-a-half after the Special Master's Report and Recommendation, and more than a year after Judge Forrest's Opinion & Order. "Because the effect of delay on the adverse party may be crucial, delays of even under a year have been held sufficient to establish laches." *Matter of Schulz v. State of New York*, 81 N.Y.2d 336, 348 (1993). There is no justification for Perles's delaying tactics, which have caused substantial prejudice. One Follow On Attorney with substantial knowledge of the proceedings, John Karr, has died; DDG and Follow On Attorneys refrained from pressing claims and arguments on behalf of their individual clients in reliance on agreements with the FSIA Partnership; and memories have certainly faded after 18 years of litigation. Moreover, DDG have made substantial professional, personal, and financial decisions based on the reasonable assumption that their formal retainer agreements with their clients, and the fees paid pursuant to them, would not be challenged years after the fact. Such prejudice is more than sufficient to warrant dismissal. *See Summers v. City of Rochester,* 60 A.D.3d 1271 (4th Dep't 2009) (dismissal based on *laches* warranted where party would not have entered into substantial transaction had objections been raised in timely manner).

14

### III.   COUNTS I, II, AND III ARE BARRED BY *RES JUDICATA* BECAUSE JUDGE FORREST REJECTED IDENTICAL CLAIMS BY PLAINTIFFS AGAINST THE DDG DEFENDANTS IN 2018

Counts I, II and III seek the same relief he sought from the Special Master and Judge Forrest – clawing back all but 3% of the fees paid to Defendants. Judge Forrest's June 18, 2018 Opinion & Order bars Perles from pursuing those claims again.

*Res judicata* establishes that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Mitchell v. Nat'l Broad. Co.,* 553 F.2d 265, 268 (2d Cir. 1977) (citation omitted). Issue preclusion (collateral estoppel) provides for "the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided." *Id.* Claim preclusion means that "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the full measure of relief to be accorded between the same parties on the same ... [claim or] cause of action." *Id.* (citation and internal quotations omitted). It "applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 221–22 (2d Cir. 2012) (citation omitted). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002).

The VC merely pastes new labels onto Perles's prior attempt to claw back attorney's fees that the Follow On attorneys earned pursuant to contingency fee agreements with their clients. The Special Master rejected those claims after hearing from Perles and DDG, including five detailed letter briefs filed by Perles alone (supported by sworn declarations, numerous exhibits, and a would-be expert witness report), among over 100 submissions and pleadings. Perles then

15

knowingly chose not to object to the Special Master's Report and Recommendation or appeal from Judge Forrest's Opinion & Order. He is not entitled to a "second bite at the apple."

### IV.   THE VERIFIED COMPLAINT FAILS TO STATE VALID CAUSES OF ACTION UNDER NEW YORK LAW

None of the five counts of the VC state a claim. Sitting in diversity, this Court applies New York's choice of law rules, *In re Coudert Bros LLP*, 673 F.3d 180, 186 (2d Cir. 2012), under which if there is no conflict between New York and District of Columbia substantive law, no choice of law analysis is necessary and New York law applies, *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Here, there are no apparent conflicts.[8]

#### A.   The Marine Barracks Agreement Precludes Plaintiffs from Pursuing Unjust Enrichment and *Quantum Meruit* Claims

Under the Marine Barracks Agreement, each group of attorneys retained their right to contingency fees based on their clients' recoveries. The Agreement defined the relationship among the various groups of attorneys and occupied the field. Under New York law, "[t]he theory of unjust enrichment lies as a quasi-contract claim." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (citation omitted). "It is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned. Where the parties executed a valid and enforceable written contract governing a particular

---

[8] **Unjust enrichment:** *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Falconi–Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016). ***Quantum meruit:*** *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *Providence Hosp. v. Dorsey*, 634 A.2d 1216, 1218 n.8 (D.C. 1993). **Common fund:** *In re Holocaust Victim Assets Litigation*, 424 F.3d 150, 156-57 (2d Cir. 2005); *Little v. Washington Metropolitan Area Transit Authority*, 313 F.Supp.3d 27, 34 (D.D.C. 2018). **Indemnification**: *McDermott v. City of New York*, 50 N.Y.2d 211, 216-17 (1980); *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. 2000). **Declaratory judgment**: *Cuomo v. Long Is. Light. Co.*, 71 N.Y.2d 349, 354 (1988); *McIntosh v. Washington*, 395 A.2d 744, 749 (D.C. 1978).

subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *Id.*[9] Because "quantum meruit and unjust enrichment are not separate causes of action," under New York law, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005), the same applies for *quantum meruit*.

### B.    Defendants Did Not Secure an Unjust Benefit

Plaintiffs' unjust enrichment claims are also defective because DDG's alleged use of causes of action and legal theories that the FSIA Partnership utilized in public litigation cannot constitute an improper benefit. A "cause of action for unjust enrichment is stated where 'plaintiffs have properly asserted that a benefit was bestowed ... by plaintiffs and that defendants will obtain such benefit without adequately compensating plaintiffs.'" *Wiener v. Lazard Freres & Co.,* 241 A.D.2d 114, 119 (1998) (citation omitted). But the pleadings Perles filed in the *Peterson* Action did not constitute a "cognizable benefit" to DDG. Perles had no property right in legal theories, just as the attorneys who crafted the first personal injury claims involving asbestos or tobacco – or for that matter those who filed the first actions in assumpsit, trespass, and trover – retained no intellectual property rights to those causes of action. "[T]he mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." *Clark v. Daby*, 300 A.D.2d 732 (3d Dep't 2002) (alternation and emphasis in original) (internal citations omitted).

Moreover, the common-law "voluntary payment doctrine" bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law. *Dillon v. U-A Columbia Cablevision of Westchester, Inc.,* 100 N.Y.2d 525

---

[9] Ironically, Perles himself advanced this very argument in the *Delaney v. Fay* case. *See* Case No. 1:19-cv-04085-LAP, ECF 27 at 14-15.

(2003) (citation omitted); *see also Wells Fargo Bank, N.A. v. Burke.* 155 A.D. 3d 668, 671 (2d

Dep't 2017) (advancing resources for collection and lobbying efforts was a "voluntary,

calculated risk" that cannot give rise to a claim in equity). The FSIA Partnership advanced

resources to litigate the *Peterson* Action and the Turnover Proceeding with full awareness of

what other counsel in the Marine Barracks cases were doing (including the fact that DDG hired

additional collections counsel). The VC alleges no expectation of recovery from other counsel,

no promise of compensation from them, and no wrongdoing or inequitable conduct that might

support unjust enrichment claims. The claim fails as a matter of law.

### C.   Common Fund Doctrine Does Not Permit Plaintiffs to Seek Attorneys' Fees from Attorneys for Other Clients

The "common fund" doctrine is a limited exception to the general rule that "an attorney

may not recover legal fees from persons other than his [or her] client merely because such other

persons might have benefited from his [or her] services." *Builders Affiliates v. North Riv. Ins.

Co.*, 91 A.D.2d 360, 366 (1st Dep't 1983). An attorney may receive a fee from a non-client when

he or she successfully prosecutes a suit that results in the creation or preservation of a common

fund to be distributed to a class of additional individuals. "Application of the doctrine typically

results in a counsel fee allowance to the party, to be taken from the fund itself, and is justified by

the equitable need to apportion expenses among all who have benefitted from the suit."

*Kantrowitz, Goldhamer & Graifman, P.C. v. New York State Elec. & Gas Corp.*, 27 A.D.3d 872,

874 (3d Dep't 2006) (citations omitted).

It is well established that "the common fund doctrine gives plaintiff no right to assert

claims against persons other than its client." *Proskauer Rose Goetz & Mendelsohn v. National

Westminster Bank U.S.A.,* 179 A.D. 2d 611 (1st Dep't 1992). Moreover, like the counsel in

*Kantrowitz,* Plaintiffs "do not dispute that they have received remuneration for their efforts

pursuant to the … contingency fee arrangement with the clients that retained them….” 27 A.D.

3d at 875. Just as “this fact alone militates against a finding that this case constitutes one in

which ‘overriding considerations’ require the equitable allowance of more fees to petitioners,”

*id.* (citations omitted), Perles is not entitled to any more fees.

### D.    The Indemnification Claim in Count IV Is Not Ripe and Should Be Dismissed Without Prejudice

Count IV sets forth a highly contingent claim for indemnification based on the possibility

that attorney Allen Rothenberg might succeed on as-yet unfiled claims against Perles. ¶¶ 191-96.

Accordingly, a claim that Defendants might then owe Perles money is not ripe for adjudication.

A case lacks ripeness when it “involves uncertain and contingent future events that may not

occur as anticipated, or indeed may not occur at all.” 13B C. Wright, A. Miller & E.

Cooper, *Federal Practice & Procedure* § 3532.2 (3d ed. 2011). “New York law clearly provides

that a claim for indemnification or contribution is premature where there has been neither entry

of judgment nor payment.” *Armored Group, LLC v. Homeland Security Strategies, Inc.*, 2009

WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (citation omitted). New York courts routinely deny

premature indemnification claims. *McKenna v. Lehrer McGovern Bovis, Inc.,* 302 A.D.2d 329,

331 (1st Dep’t 2003); *Williams v. G.H. Development & Construction Co., Inc.*, 250 A.D.2d 959,

962 (3d Dep’t 1998). Count IV should be dismissed without prejudice.

### E.    A Hypothetical Future Dispute Involving Iranian Assets That Are Not Yet Subject to This Court’s Jurisdiction Is Not Ripe for Declaratory Judgment

A court may only render a declaratory judgment if doing so would bring some practical

end to a justiciable controversy that involves present, not hypothetical, prejudice to Plaintiffs. An

action is “premature and as a matter of law may not be maintained [when] the issue presented for

adjudication involves ... future event[s] beyond the control of the parties which may never

occur." *American Ins. Assn. v. Chu,* 64 N.Y.2d 379, 385 (1985).

Count V seeks a declaratory judgment that Defendants would owe Perles most of their fees if the "Clearstream II" and "650 Fifth Avenue" alleged Iranian assets become available to secure judgments. ¶¶ 225-27. It is hard to imagine a more hypothetical, contingent or remote controversy. The Second Circuit has mandated further proceedings regarding both assets. *See Peterson v. Islamic Republic of Iran,* 876 F.3d 63 (2d Cir. 2017), *pet. for cert. filed,* No. 17-1534 (U.S. May 7, 2018) and Nos. 17-1529 and 17-1530 (U.S. May 8, 2018); *In re 650 Fifth Avenue and Related Properties,* 934 F.3d 147 (2d Cir. 2019). Under these circumstances, declaratory judgment would be premature.

## CONCLUSION

All counts of the VC should be dismissed with prejudice because no plaintiff possesses the capacity to sue. Counts I, II, and III are barred by the statute of limitations, laches, *res judicata*, and collateral estoppel. Alternately, Counts I, II, and III should be dismissed with prejudice for failure to state a claim, and Counts IV and V without prejudice for lack of ripeness.

Dated: November 25, 2019                              Respectfully submitted,

/s/ Stuart A. Berman                                  /s/ M. Katherine Sherman
Stuart A. Berman (SB7146)                             M. Katherine Sherman (KW7490)
Stanley J. Reed                                       David C. Wrobel (DW5242)
Lerch, Early & Brewer, Chtd.                          Wrobel Markham LLP
7600 Wisconsin Avenue, Suite 700                      360 Lexington Avenue, 15th Floor
Bethesda, MD 20814                                    New York, NY 10017
(301) 657-0729/(301) 347-1538 (f)                     (212) 421-8100/(212) 421-8170 (f)
saberman@lerchearly.com                               sherman@wmlawny.com
sjreed@lerchearly.com                                 wrobel@wmlawny.com

*Counsel for Joseph Peter Drennan,*
*Patrick Donahue, and Dan Gaskill*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 25, 2019, I caused this memorandum of law to be served via

the CM/ECF system and electronic mail to:

Steven Turano, Esq.
LAW OFFICES OF STEPHEN TURANO
275 Madison Avenue
New York, NY 10016

Douglas M. Bregman, Esq.
Geoffrey T. Hervey, Esq.
BREGMAN, BERBERT, SCHWARTZ & GILDAY LLC
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814

Matt Kaiser, Esq.
Christopher C. Muha, Esq.
KAISERDILLON, PLLC
1099 14th Street, N.W.
8th Floor West
Washington, DC 20005

Counsel for Plaintiffs

/s/ Stuart A. Berman
Stuart A. Berman